THE PENNSYLVANIA COMPANY *v.* REESOR, ADMINISTRATOR.

[No. 8,469.   Filed May 25, 1915.   Rehearing denied October 13, 1915.   Transfer denied February 2, 1916.]

1. TRIAL.—*Verdict.—Effect.*—In a personal injury case, a verdict for plaintiff on a paragraph of complaint grounded on negligence is in effect a finding against plaintiff on a paragraph alleging wilful injury. p. 641.

2. NEGLIGENCE.—*Trial.—Verdict.—Answers to Interrogatories.— Wilful Injury.*—A verdict on a paragraph of complaint charging negligence can not stand as against the jury's special finding that the injury was wilfully inflicted. p. 642.

3. TRIAL.—*Interrogatories to Jury.*—Under §572 Burns 1914, Acts 1897 p. 128, providing for the submission of interrogatories to the jury, interrogatories calling for a conclusion of law should not be submitted. p. 642.

4. APPEAL.—*Review.—Answers to Interrogatories.—"Wilfully".— "Intentionally".—"Or".*—An interrogatory submitted to the jury in a personal injury case asking whether the engineer in charge of defendant's train "wilfully or intentionally" ran the engine upon decedent, to which the jury answered "yes", can not be considered in determining whether a verdict for plaintiff on the theory of negli-

gence is overcome by the answers to interrogatories, since "wilfully" and "intentionally" are not synonymous, and an injury may result from intentional misconduct without containing the element of wilfulness, and the word "or" is a disjunctive conjunction coordinating words or clauses each of which in turn is regarded as excluding consideration of the other or others; while on the other hand, regarding the words as synonymous, the question calls for a conclusion of law.    p. 643.

5.  PLEADING — *Judgment on Pleadings.* — *Statutes*—Under §592 Burns 1914, §566 R. S. 1881, providing for judgment on the pleadings though a verdict has been returned against the party entitled thereto, a defendant is not entitled to a judgment on the pleadings where the verdict is based on a paragraph of complaint which was good against demurrer.    p. 646.

6.  RAILROADS.—*Injuries to Persons on Tracks.*—*Complaint.*—A paragraph of complaint alleging that decedent was walking east on defendant's south track when defendant's east bound train was approaching, and that its west bound train was approaching and passing on the other track, that the noise of the west bound train prevented him from hearing the approach of the train running east, and that the engineer of the latter train, when more than 800 feet away from decedent, saw him and discovered that he was in peril and unaware thereof, and discovered his peril in time, by the exercise of ordinary care, to have avoided the injury, but negligently failed to do so, and negligently ran into and killed decedent, was sufficient on demurrer.    p. 646.

7.  APPEAL.—*Review.*—*Harmless Error.*—*Admission of Evidence.*— In an action for the death of one who was run down by defendant's train while he was walking upon the tracks, in which decedent's want of due care was conceded, the admission of evidence to show that the track at the point where decedent was killed had been used for a number of years by many people as a thoroughfare was not prejudicial error.    p. 647.

8.  RAILROADS.—*Injuries to Persons on Tracks.*—*Evidence.*—*Contributory Negligence.*—In an action for the death of one who was run down by a train while walking on defendant's tracks, predicated on the theory of last clear chance, the admission of evidence to show that at the time of entering upon the tracks at a public street crossing decedent received no warning was proper, since under the issues the question of decedent's knowledge of the danger was important, in view of the fact that if decedent had actual knowledge of immediate danger and voluntarily encountered it he would have been guilty of such contributory negligence as to preclude recovery, while, if unconscious of the danger, the doctrine of last clear chance would apply.    p. 647.

9.  DEATH.—*Right of Recovery.*—*Pecuniary Loss.*—In an action to recover damages for a wrongful death the recovery must be based on the theory that the next of kin have sustained a pecuniary loss,

and it need neither be shown nor exist that decedent was under any legal obligation to contribute to the support of his next of kin. p. 648.

10. DEATH.—*Action.*—*Evidence.*—In an action for the benefit of the next of kin to recover damages for a wrongful death, all the facts and circumstances surrounding the parties and those showing the ability and probable inclination of decedent to continue contributions to his next of kin are admissible. p. 648.

11. APPEAL.—*Review.*—*Refusal of Interrogatories to Jury.*—There was no error in refusing to submit certain interrogatories to the jury, where the findings in answer to interrogatories submitted covered all the elements in the case as well as all the essential elements of the interrogatories refused. p. 649.

12. RAILROADS.—*Injuries to Persons on Tracks.*—*Last Clear Chance.* —*Instructions.*—In an action, predicated on the doctrine of last clear chance, to recover for the death of one killed while walking on defendant's railroad tracks, an instruction stating the law upon the theory that, although decedent failed to exercise due care up to the moment of his injury, there could be a recovery if the engineer realized the danger of decedent, and knew that decedent was unconscious of his danger, and failed to use ordinary care to avoid injuring him, was not objectionable as failing to advise the jury that decedent was obliged to use ordinary care; nor was it erroneous as omitting the question of negligence and a definition of ordinary care, in view of another instruction fully explaining the care required of the engineer. pp. 650, 651.

13. NEGLIGENCE.—*Last Clear Chance.*—*Contributory Negligence.*— Where the doctrine of last clear chance is applicable, the existence of negligence on the part of the injured person, or his failure to use due care, will not in all cases defeat a recovery. p. 651.

14. RAILROADS.—*Injuries to Persons on Track.*—*Instructions.*— *Last Clear Chance.*—In an action for the death of a person who was run down by one of defendant's trains, an instruction advising the jury that if the engineer actually saw decedent upon the track and thereafter realized decedent's perilous situation and that he was unconscious of his danger, or if by the exercise of due care the engineer could have known of decedent's peril and his unconsciousness thereof, such engineer could not indulge the presumption that decedent would leave the track in time to avoid injury, and was required to use all the means at hand and under his control to avoid the injury, did not charge defendant with the duty of using ordinary care to discover decedent on the track in the first instance, and was not misleading to the jury. p. 652.

15. RAILROADS.—*Injuries to Persons on Tracks.*—*Negligence.*—*Last Clear Chance.*—Under the rule of last clear chance, as applied in an action for the death of a person killed while walking on defendant's tracks, if defendant's engineman actually saw decedent on the track, and realized or should have realized his peril by the exercise of

ordinary care, then such engineman was charged with ordinary care to discover whether decedent was conscious of his danger, and to use all the means at hand and under his control to avoid the injury, and his failure to exercise ordinary care under such circumstances, and in such particulars, was negligence constituting the proximate cause of the injury, and the want of due care by decedent was the remote cause.   p. 653.

16.   APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—There was no prejudicial error in the giving of instructions upon the theory of a wilful injury, where the verdict was expressly upon a paragraph of complaint based on negligence.   p. 654.

17.   APPEAL.—*Review.*—*Refusal of Instructions.*—Reversible error can not be predicated on the refusal of instructions on the subject of wilful injury, where the finding was in appellant's favor on that theory of the case, nor in the refusal of instructions that were fully covered by the instructions given.   p. 654.

18.   RAILROADS.—*Injuries to Persons on Tracks.*—*Evidence.*—*Sufficiency.*—Evidence showing that decedent entered upon defendant's track at a public street crossing, and while walking east on the track a train approached from the east on the adjoining track which prevented decedent from hearing the approach of a train from the west on the track on which he was walking, that proper signals were not given, and that the engineer knew that decedent was unconscious of his peril, etc., was sufficient to sustain a verdict for plaintiff.   p. 655.

From Gibson Circuit Court; *Herdis F. Clements,* Judge.

Action by G. F. Reesor, Administrator of the estate of A. F. Reesor, deceased, against The Pennsylvania Company. From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*John E. Iglehart, Edwin Taylor, Embree & Embree* and *E. H. Iglehart,* for appellant.

*Miller & Miller, John W. Brady* and *Phelps F. Darby,* for appellee.

SHEA, C. J.—Appellee, as administrator, brought this action to recover damages for the death of his decedent, who was struck and killed by a train of appellant in the city of Valparaiso, Indiana, on July 27, 1908.   The cause was tried on the third and fourth paragraphs of amended complaint.   The

third paragraph is predicated upon the theory of wilful injury. Inasmuch as the verdict of the jury is based wholly on the fourth paragraph, the third is not set out in this opinion. The fourth paragraph alleges in substance that in July, 1908, decedent was a student at Valparaiso University in the city of Valparaiso, Indiana; that appellant's double track line of railroad and right of way adjoins the grounds of the university at and near the crossing of Greenwich Street in said city; that on the evening of July 27, 1908, between six and seven o'clock, decedent was walking east on appellant's south track near said Greenwich Street crossing within the corporate limits of the city; that at the same time a passenger train operated by appellant was approaching decedent on the south track from the west, one of its trains from the east was approaching and passing decedent on appellant's north track; that the noise of the passing train running west prevented decedent from hearing the approach of the train running east, and on that account he did not at any time know that he was in danger of being run over by said train; that the engineer in charge of the train running east, when more than 800 feet away from decedent, saw him on the track in front of the train, and then and there discovered that he was in peril and unaware thereof, and continuously thereafter observed him on the track, and realized his danger; that said engineer "discovered said peril in time, by the exercise of ordinary care to have avoided the injury to said decedent, but negligently failed to do so, and defendant, by its agents and servants then and there carelessly and negligently ran said locomotive and train of cars against and over decedent," thereby causing his injuries and death; that appellant's agents and servants operating said locomotive and train were engaged in the discharge of

their respective duties and acting in the line of their employment; that decedent was 22 years old, of sound health and large earning capacity, and left his father and mother and brothers and sisters as next of kin, for whose benefit the action was instituted. Demurrers to each of these paragraphs were overruled. An answer in general denial formed the issues submitted to a jury for trial, resulting in verdict and judgment for appellee. With its general verdict, the jury returned answers to certain interrogatories.

It is assigned that the court erred in overruling, (1) appellant's motion for judgment on the facts found in answer to the interrogatories notwithstanding the general verdict; (2) its motion for judgment notwithstanding the general verdict (on the pleadings); (3) its demurrer to each the third and fourth paragraphs of amended complaint; (4) its motion for a new trial; (5) its motion in arrest of judgment.

The first question presented and argued is the alleged error of the court in overruling the motion for judgment on the facts found in answer to the special interrogatories submitted, notwithstanding the general verdict. The trial court submitted forms of verdict to the jury, which returned a general verdict, finding for appellee on his fourth paragraph of complaint. No objection is presented as to the form of the verdict. It is correctly argued by appellant that this finding of the jury was in effect a finding against appellee on the third paragraph of the complaint. This is fully sustained by the following authorities. *Central Union Tel. Co.* v. *Fehring* (1896), 146 Ind. 189, 193; 45 N. E. 64; *Union Central Life Ins. Co.* v. *Huyck* (1892), 5 Ind. App. 474, 32 N. E. 580. The fourth paragraph of the complaint on which the verdict

rests, appellee insists, is drawn on the theory
2. that the injury was due to the negligence
of appellant, invoking the doctrine of last
clear chance. Interrogatory No. 38 and the answer
thereto read as follows: "Did said John Bechtol
as such engineer 'wilfully or intentionally' run said
engine upon or cause it to strike said A. F. Reesor?
A. Yes." It is argued that this finding is in such ir-
reconcilable conflict with the general verdict that
both can not stand, and, therefore, the motion should
have been sustained. It is well settled that the doc-
trine of wilfulness and negligence are antagonistic,
and can not be reconciled, therefore, appellant con-
tends if the injury complained of was wilfully com-
mitted, a verdict based upon the fourth paragraph of
complaint charging negligence can not stand, and
the motion should have been sustained. The fol-
lowing authorities sustain this contention. *Bar-
rett* v. *Cleveland, etc., R. Co.* (1911), 48 Ind. App.
668, 96 N. E. 490; *Louisville, etc., R. Co.* v. *Bryan*
(1886), 107 Ind. 51, 54, 7 N. E. 807; *Miller* v. *Mil-
ler* (1897), 17 Ind. App. 605, 47 N. E. 338; *Greg-
ory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385,
14 N. E. 228. Appellant's position in this respect is
sound, and must be upheld if the interrogatory sub-
mitted was a proper one, and the fact elicited there-
by can be considered by this court. The statute
under which interrogatories are authorized
3. to be submitted to the jury, being §572 Burns
1914, Acts 1897 p. 128, provides that when
"requested by either party, the court shall instruct
them (the jury) when they render a general verdict
to find specially upon particular questions of fact
to be stated to them in writing in the form of in-
terrogatories on any or all the issues in the cause."
It is argued that this interrogatory is improper for
the reason that it called for a conclusion of law.

The theory upon which interrogatories are submitted to the jury, as above stated, is violated by the submission of one that calls for a conclusion of law, for it is never the province of the jury to determine by answers to interrogatories questions of law. Facts only should be sought, as the statute clearly contemplates. *Tippecanoe Loan, etc., Co.*. v. *Jester* (1913), 180 Ind. 357, 375, 101 N. E. 915, L. R. A. 1915 E 721; *Board, etc.* v. *Bonebrake* (1896), 146 Ind. 311, 317, 45 N. E. 470; *Avery* v. *Nordyke & Marmon Co.* (1905), 34 Ind. App. 541, 558, 70 N. E. 888; *Insurance Co.* v. *Osborn* (1901), 26 Ind. App. 88, 92, 59 N. E. 181; *Chicago, etc., R. Co.* v. *Ostrander* (1888), 116 Ind. 259, 15 N. E. 227, 19 N. E. 110. This interrogatory is subject to criticism for another reason. It presents to the jury two propositions which are in some measure at least conflicting. It asks the jury to state whether the injury was "wilfully or intentionally" inflicted. Injury may result from intentional misconduct, with heedlessness as to consequences, without containing the element of wilfulness. For instance, there may be an intentional omission to perform some duty, which results in an injury, which could not be termed wilfulness, as there may be an intentional omission to give the proper signals in approaching a person upon a railway track, which results in injury. It might be reasoned from this that the injury itself was intentionally inflicted, and yet the element of wilfulness may be lacking.

"Wilfulness" is variously defined as follows: "The words 'wilful' and 'wilfully' are of somewhat varied signification according to the context in which they are used in some particular cases, and the nature of the subject under discussion or treatment. They are frequently used in the sense of in-

tentionally, or, in other words, as implying a purpose or design, or proceeding from a conscious motion of the will as distinguished from accidentally or involuntarily, and they are accordingly used in the sense of or as equivalent to willingly; designedly; purposely; obstinately; stubbornly; inflexibly; perversely; voluntarily; deliberately; with set purpose, being governed by the will without regard to reason, or without yielding to reason. But 'wilfully' has been held not to be the equivalent of 'feloniously', 'unlawfully', 'falsely' or 'corruptly' ". 40 Cyc 938. Century Dictionary defines "intent" as follows: "Personal intention; the state of mind in respect of intelligent volition; the voluntary purposing of an act: often distinguishable from the motive which led to the formation of the intent. The tendency imputable by law to an act; the constructive purpose of an action, for which the doer may be responsible, although the actual intent was not wrongful." "Wilfully" is defined as follows: "By design; with set purpose, intentionally; especially, in a wilful manner, as following one's own will; selfishly; perversely; obstinately; stubbornly." Century Dictionary.

In the case of *Coal Bluff Min. Co.* v. *McMahon* (1913), 54 Ind. App. 131, 136, 102 N. E. 862, the court in discussing the subject said: "There may be intentional misconduct which is in no sense wilful. Wilful misconduct includes both intentional and wrongful action, so we think the language of the statute does not require that the complaint shall charge wilful misconduct, either with respect to the omission to perform duties, or with respect to the violation of the provisions of the statute mentioned. There is a clear distinction between the wilful failure to comply with the provisions of a statute and a mere omission of duty with respect to such statute."

In the case of *Barrett* v. *Cleveland, etc., R. Co.,* *supra,* 673, the court quotes with approval from the case of *Louisville, etc., R. Co.* v. *Bryan, supra,* the following language: "To constitute a wilful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is *quasi* criminal." *Chicago, etc., R. Co.* v. *Nash* (1890), 1 Ind. App. 298, 27 N. E. 564; *State* v. *Roth* (1913), 162 Iowa 638, 144 N. W. 339, 50 L. R. A. (N. S.) 841; *Birmingham R., etc., Co.* v. *Taylor* (1913), 6 Ala. App. 661, 60 South. 979; *Southern R. Co.* v. *Mc-Neely* (1909), 44 Ind. App. 126, 88 N. E. 710, 714; *Brooks* v. *Pittsburgh, etc., R. Co.* (1902), 158 Ind. 62, 62 N. E. 694. If we could treat the words "wilfully" and "intentionally" as synonymous, as appellant seems to do in its very able brief, and for which there is some justification when the full import of the question is considered, we must conclude that since the word "wilfully" is the broader term, and generally includes the element of intention, therefore, the jury was in effect asked to find whether the act was wilfully done. This being true, it calls for a conclusion of law, and is objectionable. However, it will be observed that the words are separated by the disjunctive "or", therefore, we conclude that the question was probably drawn upon the theory that the words were not synonymous. The word "or" is defined in the Century Dictionary as a "Disjunctive conjunction coördinating two or more words or clauses each one of which in turn is regarded as excluding consideration of the other or others." The question thus considered is double in form and is, therefore, misleading and confusing. It submits to the jury the task of determining the

distinction between the two words, which the jury does not do. We are unable to say what was really meant by the jury in the answer to this question. It may have been in the minds of the jurors that the acts leading up to the injury were intentionally done, without the element of wilfulness, or they may have thought that the injury was caused by wilfulness. From any viewpoint, the question is objectionable. So that we conclude that interrogatory No. 38, and the answer thereto, shall not be considered in determining the question as to whether there is a conflict between the general verdict and the answers to interrogatories. This being the only question presented in support of this motion, we find no error was committed by the trial court in this respect.

The next question presented and argued is the alleged error of the court in overruling the motion for judgment on the pleadings, notwithstanding the general verdict. Section 592 Burns 1914, §566 R. S. 1881, provides: "When upon the statements in the pleadings, one party is by law entitled to judgment in his favor, judgment shall be rendered by the court, though a verdict has been found against such party." Inasmuch as we hold the fourth paragraph of complaint good as against a demurrer, this motion was properly overruled. Demurrers to the third and fourth paragraphs of complaint were overruled, and proper exceptions were reserved thereto. For reasons above stated, the ruling of the court on the demurrer to the third paragraph of complaint need not be considered, as there was a finding for appellant upon said paragraph. *Winnemucca Water, etc., Co.* v. *Model Gas, etc., Works* (1913), 179 Ind. 542, 549, 101 N. E. 1007. Appellant does not point out in argument any special objection to the fourth paragraph of complaint. We

have examined it with care. The substance is set out herein, and it is our conclusion that said paragraph states facts constituting a cause of action.

The next error presented and argued is the alleged error of the court in overruling appellant's motion for a new trial, in support of which it is insisted first, that the court erred in permitting questions Nos. 65, 66 and 67 of the deposition of the witness Carboy, and each one of them, to be read in evidence. These questions and answers thereto develop the fact that the railroad track at the point where decedent was killed had been used for a number of years as a thoroughfare by the students of the university. While the fact that other people were in the habit of using appellant's track as a thoroughfare would not excuse decedent for his negligence, which proximately contributed to his injury, prejudicial error can not be predicated upon such evidence in this case, as decedent's want of due care is conceded on the theory upon which the case was tried.

It is next insisted that there was error in admitting the evidence of May Bradberry that no warning was given them not to go on the track at Greenwich Street crossing. We think no error can be predicated on the admission of this evidence, for the reason that under the fourth paragraph of the complaint it becomes important to know in determining the issues presented, whether decedent had actual knowledge of the immediate danger which resulted in his death. As we view this paragraph of the complaint it is based upon the doctrine of last clear chance. If decedent had actual knowledge of his immediate danger, and voluntarily encountered the risk, then he was guilty of such contributory negligence as will prevent a recovery. It, therefore, became important in the evi-

dence to have the jury know the facts in order that it might determine that question. If, as is claimed, decedent was unconscious of his danger, and appellant's servants knew the danger, then, if the other facts disclosed warrant it, the doctrine of last clear chance is presented. *Indianapolis Traction, etc., Co.* v. *Croly* (1913), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091.

It is further insisted that there could be no recovery because decedent was under no legal obligation to contribute to the support of his father and mother, brothers and sisters, and that evidence heard in support of this theory was improper. It need not be shown, and the fact need not exist, that decedent was under a legal obligation to contribute to the support of his next of kin in order to warrant a recovery in this action. It is the settled law that a recovery in such cases must be based on the theory that the next of kin has sustained a pecuniary loss. That pecuniary loss is based wholly upon the fact that decedent had contributed to their support for reasons which were sufficient for himself and next of kin, and that they had reasonable expectation that such contributions would continue. This being true, all the facts and circumstances surrounding the parties, together with the facts showing the ability and probable inclination of decedent to so continue such contributions, were proper to be heard in evidence. *Pittsburgh, etc., R. Co.* v. *Reed* (1909), 44 Ind. App. 635, 642, 644, 88 N. E. 1080; *Diebold* v. *Sharp* (1898), 19 Ind. App. 474, 49 N. E. 837; *Louisville, etc., R. Co.* v. *Wright* (1893), 134 Ind. 509, 34 N. E. 314.

Objections are made to the refusal of the court to submit certain interrogatories to the jury. We have examined with some care the interrogatories

refused by the court, and do not find that reversible error was committed. The interrogatories submitted were elaborate and searching, and develop the essential facts at issue in the cause. The interrogatories refused go wholly to the question of decedent's want of due care. The interrogatories find, in substance, that decedent was killed by being struck by a locomotive engine at the time and place set out in the complaint; that he, in company with a young lady, was walking upon the railroad track for pleasure; that at least one of appellant's trains passed along the track each hour. The company's railroad was at said point double tracked; that Greenwich Street, at which point decedent entered thereon, crossed both tracks, which were straight for a distance of ninety rods east and west of the crossing; that they walked toward the east, and noticed a train approaching from that direction on the north track, upon which they were walking. They crossed from the north to the south track in order to avoid the approaching train; that they were not excited or flustrated by the approach of the train from the east; that they walked some distance up the track toward the east, with their faces in that direction, decedent supporting the young lady upon the rail; that the train approached from the west. If he had looked west at the time he entered upon the south track, he could have seen the train approaching from the west; that he was a strong and active man; that the engine which struck him was some distance away from him when he went upon the south track, running at the rate of thirty miles per hour at that time; that the distance from the middle line of Greenwich Street to the middle of the cattle guard over which decedent and the young lady passed was 254.4 feet; that there was no road, street or highway at the point where decedent

was struck, and that the engine was operated by John Bechtol, engineer, in the employ of appellant at the time; that John Bechtol, as such engineer, wilfully or intentionally ran said engine upon and caused it to strike decedent; that the engineer, after he realized that decedent was probably unconscious of his peril, did not do all in his power to stop the engine, and avert striking him; that the point where decedent was struck was not within the limits of any depot grounds, road, street or highway, and if decedent had listened for a train upon the south track which might be approaching him from the west, he could not have heard the train that struck and killed him. The findings of the jury cover all the elements in the case, as well as all the essential facts covered by the interrogatories refused.

It is argued that instruction No. 3 given by the court at appellee's request is erroneous. Said instruction reads as follows: "The court instructs the jury that the decedent, A. F. Reesor was a trespasser upon defendant's track at the time and place complained of by the plaintiff and the jury in this case will find for the defendant, unless they further believe from a preponderance of the evidence that the defendant's engineer in charge of its east bound train No. 2 at the time and place complained of discovered that said decedent, A. F. Reesor, was in a perilous position on defendant's track in front of said train and that the decedent, Reesor, was unaware of his perilous position and that he made said discovery in time to avoid striking said Reesor by stopping said train or checking the speed thereof by the exercise of ordinary care in the use of the means then at hand and under the control of said engineer consistent with the safety of said train and the passengers thereon. But in case you find that said en-

gineer with ordinary care in the use of such means as were then at hand and under his control and without endangering the train or the persons thereon could have stopped said train or checked the speed thereof so as to avoid striking said decedent, then your verdict should be for the plaintiff." It is contended that this instruction omits entirely the question of negligence, and a definition of ordinary care, and, therefore, it follows that the jury was misled, and was peremptorily directed to find for appellee, if appellant's servants, in the exercise of ordinary care could have avoided the injury. Instruction No. 7 given by the court fully explains the care required of the engineer. It is further urged in objection to this instruction that it gave the jury to understand that decedent was not obliged to use ordinary care with which he is always chargeable in case of injury.

As a general proposition, the statement of the law contended for by appellant is correct, but in the application of the doctrine of last clear chance, the existence of the negligence of the party injured, or his failure to exercise due care will not, in all cases, defeat a recovery. Although he failed to exercise due care, which continued up to the moment of his injury, if the evidence discloses that the engineer in charge of this train, applying the principle to this case, realized the danger of decedent, and knew that he was unconscious of his danger, and so knowing and realizing failed to exercise ordinary care to avoid the injury, appellee is entitled to recover. This instruction was drawn upon that theory, and is, therefore, not erroneous. *Indianapolis Traction, etc., Co.* v. *Croly, supra; Chicago, etc., R. Co.* v. *Pritchard* (1907), 168 Ind. 398, 79 N. E. 508, 81 N. E. 78, 9 L. R. A. (N. S.) 857; *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 79 N. E.

347, 7 L. R. A. (N. S.) 143, 10 Ann. Cas. 942. Instruction No. 7 reads as follows: "While it is true, as a general rule, that an engineer of a locomotive engine, seeing a man of adult years on the track in front of his train, has the right to presume that such man will leave the track in time to avoid collision with his train, and to indulge this presumption until the last moment that general rule has its exception; and the presumption that the man will leave the track in time to avoid injury, may not be indulged by the engineer, under the law of this state, if from the situation as it presents itself to said engineer or as it would present itself to a man of ordinary prudence and judgment in the engineer's exact situation it is apparent that the man on the track is unconscious of his peril and in all cases where the man on the track is in a perilous situation, and unaware of his peril, and a man of ordinary prudence situated as such engineer is at the time situated, would see and know such facts, it then becomes the duty of such engineer to abandon such presumption and use all the means at hand and under his control, which may be used with safety to his train and the persons thereon, to avoid injuring the man on the track; and such engineer is not, under the circumstances last indicated in this instruction, authorized to presume that the man on the track will leave the track; but, from the time he discovers the man's perilous position, his unconsciousness of danger, the engineer must presume that the man will not leave the track until the danger of his position or his unconsciousness of such danger ceases." It is insisted that this instruction is erroneous for the reason that it imposes a duty upon the engineer not contemplated by the law. For instance, appellant insists that it charges that the engineer's failure to use ordinary care to discover de-

cedent on the track in the first instance, would render appellant liable under the doctrine of last clear chance, in spite of appellee's prior and continuing negligence. If this is the theory of the instruction, the objection is well taken. While this instruction is not a model, we think it is not susceptible of the construction given it by appellant's learned counsel. When the tenor and full import of the language is considered, it is fairly stated as the dominant thought that this engineer, if he actually saw decedent upon the track, and after so seeing him, if he realized decedent's perilous situation, and that decedent was unconscious of his danger, or if by the exercise of due care he could have known of said decedent's peril, and his unconsciousness thereof, then, in that situation, he could not indulge the presumption that decedent would leave the track in time to avoid injury, but he, the engineer, must use all the means at hand and under his control to avoid the injury. Whether he did use such means was a question of fact for the jury. Appellant states the rule too broadly in its criticism. The rule as laid 15. down by our courts as applied to the present case, may be stated as follows: If the engineman actually saw appellee on the track, and realized or should have realized his peril by the exercise of ordinary care, then said engineman was charged with ordinary care to discover whether he was conscious of his danger, and to use all the means at hand and under his control to avoid the injury. If he failed to exercise ordinary care under such circumstances, and in the particulars stated, then his negligence became the proximate cause of the injury, and the want of due care of the injured party became the remote cause. This is the rule laid down in the case of *Indianapolis Traction, etc., Co.* v. *Croly, supra.* The case of *Indianapolis Traction,*

*etc., Co.* v. *Kidd, supra,* fully sustains this instruction as given, using language very similar. It is practically undisputed that the engineer saw decedent and knew his perilous situation. Whether he exercised due care under all the circumstances was a question of fact. We think the jury can not have been misled by this instruction, and, therefore, it was not error to give it.

It is further insisted that the giving of instruction No. 8 requested by appellee was erroneous. This instruction was upon the theory of wilful injury as charged in the third paragraph of complaint. Inasmuch as there was a finding for appellant upon said third paragraph, no error can be predicated upon the giving of this instruction. *Partenheimer* v. *Southern R. Co.* (1913), 54 Ind. App. 125, 101 N. E. 103; *Southern R. Co.* v. *Ellis* (1913), 53 Ind. App. 34, 101 N. E. 105; *Louisville, etc., Traction Co.* v. *Lottich* (1915), 59 Ind. App. 426, 106 N. E. 903. The same may be said to be true with respect to instructions Nos. 9 and 12 requested by appellee, and given by the court.

Error is also predicated upon the refusal of the court to give instructions Nos. 2, 3, 5, 8, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 24, 27, 30, 33, 34 and 36 requested by appellant. Instructions Nos. 15, 16, 17, 18 and 19 inform the jury as to the law with respect to wilfulness. Inasmuch as this issue was decided in favor of appellant, as heretofore stated, no error can be predicated on the failure to give these instructions. We have examined all of the other instructions, and in so far as they were applicable to the issue, they were covered by the instructions given. The other instructions, while stating the law correctly generally, ignore entirely the theory of last clear chance. We think no error can be predicated upon the refusal to give any

of the instructions so tendered. *Boland* v. *Claudel*
(1914), 181 Ind. 295, 104 N. E. 577.

The evidence discloses that decedent was a
young man attending law school at Valparaiso,
Indiana, and on the evening of July 27,
1908, in company with a young lady, a fel-
low student, he entered upon the tracks of ap-
pellant at a public crossing and walked down the
track for a pleasure stroll. They were walking to-
ward the east. The railroad at that point was double
tracked, and they were walking on the north track.
A train was approaching from the east upon the
north track. They crossed over to the south track
and continued their walk. It is disclosed that a
train was approaching also from the west, on the
south track, toward which decedent's back was
turned. There is evidence to sustain the theory that
the noise of the train approaching from the east
prevented decedent from hearing whatever signals
were given by the train approaching from the west.
There is some evidence to show, also, that the proper
signals were not given. There is evidence to show
that the engineer knew decedent was unconscious of
his danger, because of his actions and conduct, and
because of the engineer's knowledge that the train
passing decedent was making such noise as to pre-
vent him hearing the signals given by the train ap-
proaching from the west. The evidence of the young
lady who accompanied him is to the effect that
neither of them knew anything of the train approach-
ing from the west until said train was within twen-
ty feet of them, too late for decedent to escape in-
jury. There was therefore evidence upon which the
jury might rest a verdict, and upon which this court
should sustain it on the doctrine of last clear chance,
as this court can not weigh the evidence to dis-
turb the verdict of the lower court. There is evi-

dence to sustain the verdict in this court under the well settled rule. It follows, therefore, that no error was committed in overruling appellant's motion for a new trial, neither was there error in overruling appellant's motion in arrest . of judgment. We find no error in the record which would warrant this court in reversing the judgment. Judgment affirmed.

Note.—Reported in 108 N. E. 983. As to who may sue for death by wrongful act, see 12 Am. St. 870. As to the doctrine of last clear chance as affected by the question whether negligence of plaintiff or decedent and of defendant was concurrent, see 7 L. R. A. (N. S.) 132, 152; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446; 27 L. R. A. (N. S.) 379. On the last moment to which a presumption that a person in a dangerous condition will seek a place of safety may be indulged, see 69 L. R. A. 554. See, also, under (1) 38 Cyc 1885, 1887; (2) 29 Cyc 658; (3) 38 Cyc 1912; (4) 38 Cyc 1930; (5) 23 Cyc 779; 31 Cyc 608; (6) 33 Cyc 865-869; (7) 38 Cyc 1425; (8) 33 Cyc 888; (9) 13 Cyc 321; (10) 13 Cyc 350, 354, 355; (11) 38 Cyc 1913; (12) 33 Cyc 915; (13) 29 Cyc 530; (14) 33 Cyc 910; (15) 33 Cyc 854; (16) 38 Cyc 1815; (17) 38 Cyc 1711, 1817; (18) 33 Cyc 889, 892.