UNION TRACTION COMPANY OF INDIANA *v.* GAUNT.

[No. 24,155.   Filed May 16, 1922.   Rehearing denied April 17, 1923.]

1. NEGLIGENCE.—*Imputed Negligence.*—To impute the negligence of one person to another, the relation between them must be one invoking the principle of agency, or the parties must be co-operating in a common or joint enterprise, or the relation between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person actually negligent.   p. 114.

2. NEGLIGENCE.—*Negligence of Driver of School Wagon.—Imputing to Parent of Pupil.*—Where a township trustee, pursuant to statutes, furnished a wagon to transport children to school, the negligence of the driver of the wagon, resulting in the death of a child, could not be imputed to the parent, who, while having the legal right to avail himself of the use of the conveyance, had no right to control its management or the conduct of the driver.   p. 114.

3. TRIAL.—*Verdict.—Effect.*—Proof of every necessary element of a case by a fair preponderance of the evidence is established *prima facie* as deduction from the general verdict of the jury.   p. 115.

4. RAILROADS.—*Crossing Accidents.—Care Required of Passenger in Vehicle.*—To deny or set aside the legal doctrine of at-

tributive negligence does not excuse the passenger or guest in a vehicle about to cross railroad tracks from exercising due care, and, if such passenger or guest does not exercise such care as a reasonably prudent person should exercise under the circumstances, not being an infant *non sui juris*, such person cannot recover for injuries occasioned by a failure to exercise such care.  p. 116.

5. APPEAL.—*Questions Reviewable.—Questions of Fact.—Last Clear Chance.*—In an action by a father for the death of a child, who was killed when a school wagon in which she was riding was struck on a crossing by an interurban car, whether the car could have been stopped by the use of the appliance available before reaching the crossing, and whether the motorman exercised reasonable care after he had knowledge of the danger of collision, *held* questions of fact for the jury.  p. 117.

From Adams Circuit Court; *David E. Smith*, Judge.

Action by Arthur L. Gaunt against the Union Traction Company of Indiana.  From a judgment for plaintiff, the defendant appeals.  (Transferred from the Appellate Court under §1394, cl. 2, Burns 1914, Acts 1901 p. 565.)  *Affirmed.*

*J. A. Van Osdol, Warner & Warner, C. J. Lutes* and *John M. Smith*, for appellant.

*John F. LaFollette*, for appellee.

TRAVIS, J.—This is an action by appellee, against appellant, to recover damages alleged to have been sustained on account of the death of his daughter, which resulted from an injury occasioned by a collision on a highway crossing of appellant's car with a township school wagon, in which the deceased was a passenger, and by which she was being conveyed to school.

Appellant operated an interurban railroad, which crossed the public highway where the collision and injuries complained of took place, at an acute angle; the railroad running northeast and southwest, and the highway north and south.  At the junction of the railroad and highway, and north of the railroad and east of the highway, was situated a country store, which was about

thirty-two feet at the southwest end and about twenty-eight feet at the southeast end from the railroad track. Appellee's daughter, who received the injuries, was twelve years of age, a pupil in school, and on the morning and at the time of the accident was on her way as a passenger in the school wagon, from the place where she was living, which was the home of her aunt, to the school. The school wagon was owned and driven by the person selected and hired by the school trustee, as provided by law. Previous to the accident, the school wagon driver had collected twenty-two pupils and was proceeding south along the highway, and had reached the country store and railroad, and had stopped in front of the store in such a position that his team was south of the south line of the country store, and the wagon north of such line. The stop was made for the convenience of one of the pupils, a little girl who had an errand to perform at the store. The errand was completed in about three minutes. But about the time she entered the school wagon, and before the driver had started it, a work car, belonging to appellant, came around a curve from the south, which was about 800 feet distant from the crossing. When the car came around the curve on to the straight track and was a distance of 800 feet from the crossing, the motorman could and did see the team which was standing about ten feet east of the track, but he could not and did not see the wagon. He knew that the school wagons passed this crossing about this time. At the time he first noticed the team, the speed of the car he was operating was between 35 and 50 miles per hour. The driver of the school wagon started his team across the track as soon as the little girl had regained her place in the wagon, and before starting he listened but did not hear the approach of the car nor any signals given of its approach by whistle or bell, and looked down the track

in the direction from which the car was coming and did not see it. When the team had cleared the track and the front wheels of the school wagon were in the middle of the track between the rails, the driver of the wagon noted the approach of the car about 100 feet distant on his left, and also heard someone call out that a car was coming. He prodded one of his horses with a stick, which caused it to lunge forward to escape being hit by the oncoming car. The motorman testified that when about 400 feet distant from the crossing, and after he had seen the team start across the track, he threw off the current and applied the air brakes to check the speed of the car, and when about 150 feet distant from the crossing he reversed the controller and applied the power in the last effort to stop the car and avoid a collision. The motorman in charge of appellant's work car was not a regular motorman and was not hired for that purpose, but was running the car that morning. He was employed by appellant as a lineman. This trip was his second trip over this line from the east. Evidence was given by three experienced motormen to the effect that "the power" on the work car "was not shut off and the brakes were not applied;" that such lineman as motorman in charge of the car, "did not sustain his position and did nothing to stop the car;" and that, if such car were running at a speed of 40 miles an hour it could, under the circumstances, have been stopped within a distance of 300 feet. The work car hit the rear end of the school wagon, demolishing it and throwing the children and driver out, and stopped between 200 and 300 feet down the track. The daughter of appellee, who was injured, was at the time of the accident riding in the rear end of the school wagon, and after the accident was picked up some little distance away unconscious and badly injured, from which injuries she died the following day without regaining

consciousness. The evidence disclosed that the appliances on the car to stop it were in good mechanical condition; that the rails were dry; that the air was so clear that one could see clearly for a distance of 800 feet.

The complaint in two paragraphs was founded upon the alleged negligence of appellant in running and operating its car at a high and dangerous rate of speed, and upon negligence of appellant in failing to give warning of the approach of said car to the crossing where the collision occurred by sounding a whistle or ringing a bell as required by law, and upon the failure of appellant's motorman to stop said car, or to check the speed thereof, and thus avoid the collision, knowing that, unless the car was stopped or the speed of same slackened, the impending accident would occur.

The issue was formed by appellant's answer in general denial to each paragraph of the complaint. The trial resulted in a general verdict by the jury for the appellee, together with answers to interrogatories propounded to the jury. Appellant's motions for judgment in its favor on the answers of the jury to the interrogatories, notwithstanding the general verdict, for a new trial, and in arrest of judgment, were each in turn overruled by the court, and thereupon the court rendered judgment upon the general verdict in favor of appellee, from which appellant appealed.

Errors relied upon for reversal of the judgment were: (1) for overruling the motion for verdict on the answers of the jury to the interrogatories; and (2) overruling the motion for a new trial. The causes for a new trial relied upon are: (a) the verdict is not sustained by sufficient evidence; (b) the giving of three instructions to the jury.

Admitting that the negligence of appellant is estab-

lished by the general verdict, and that it was negligence on the part of the driver of the school wagon to have so driven upon the railroad track, and that such act was negligence on his part and contributed to the injury; the sole question is: Was such negligence of the driver of the school wagon attributable or imputed to the father of the deceased?

Appellant depends upon the rule of law, as set forth in its brief: "The general rule that when a parent entrusts a child to the care or custody of another, and such child is injured by reason of the contributory or concurrent negligence of such person, the negligence of such person so in charge of such child is imputed to the parent and the parent cannot recover." Appellant's statement is too general; it cannot be applied to this case to determine it.

The evidence and law cited and relied upon in this case by appellant admit that the conveyance and the driver, and the route and schedule of the conveyance, were provided for by law and governmental agencies. The status of the relationship between the plaintiff and such driver will determine the question of attributable negligence. The driver of the conveyance was employed under authority of law by the school township, acting through the school trustee. To be sure, the plaintiff had the legal right to avail himself of this agency, but he had the right neither to employ, discharge, to enlarge or limit the scope of such employment, nor regulate the route or time schedule of such driver. To impute the negligence of one person to another, the relation between them must be one invoking the principles of agency; or the parties must be co-operating in a common or joint enterprise; or the relation between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person

actually negligent. 1 Shearman & Redfield, Negligence (6th ed.) §65a *et seq.* None of the elements of the relation of master and servant exist between the plaintiff and the driver. The question of agency, therefore, may well be denied, under the rule relating to passengers in omnibuses concerning imputed negligence. To hold the negligence of the driver imputable to plaintiff because of their combined occupation in a common or joint enterprise, it would be necessary to hold that the plaintiff had an equal right to direct and govern the movements and conduct of the driver in respect to such negligent acts. And, in so far as the relationship between the plaintiff and such driver is concerned in this case, it must be held that the plaintiff had no legal right to control the actions of the driver in the operation of his movements. So that, in so far as the negligence of the driver of the conveyance is concerned in this case, it is not to be considered as limiting the legal right of plaintiff to damages, based upon proof of every essential element necessary thereto, committed by the defendant. Thus it has been held that the negligence of the driver of a vehicle in which he is riding, is imputed to the guest where both are engaged in a joint enterprise in which the transportation is a factor; that to establish a joint enterprise "the passenger must have either express or implied right to direct the movements of the vehicle used." *Robison* v. *Oregon-Washington R. & N. Co.* (1918), 90 Ore. 490, 176 Pac. 594.

However, it was necessary for plaintiff to prove every necessary element of his case by a fair preponderance of the evidence, the basis of which is the negligence of the appellant. Such elements of proof are *prima facie* established, as a deduction from the general verdict of the jury.

3.

To deny or set aside the legal doctrine of attributive negligence does not excuse the passenger or guest from

exercising due care. If such passenger or guest
4. does not exercise such care as a reasonably pru-
dent person should exercise under the circum-
stances, not being an infant *non sui juris,* such person
cannot recover for injuries occasioned by a failure to
exercise such care. *Brommer* v. *Pennsylvania R. Co.*
(1910), 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A.
(N. S.) 924.

Appellant complains of the ruling of the court in over-
ruling his motion for a verdict upon the answers of
the jury to the interrogatories, notwithstanding the
general verdict. It appears from the answers of the
jury that the motorman of appellant's car did not do
all that he could do to stop his car and avoid the acci-
dent, in that he failed to use the equipment provided to
stop the car at the proper time. In the light of the
statements of the evidence in the briefs of each of the
parties, and the answers of the jury to the interroga-
tories, the court is constrained to believe that there is
evidence to prove every necessary, essential fact which
must be found in order that the plaintiff might recover,
and therefore will not weigh the evidence in order to
reach a conclusion to overthrow the verdict.

Appellant complains on account of three certain in-
structions that were given to the jury, which are sepa-
rated into two groups and under two points. Under
the first group, two of the instructions are considered
together because they are concerning the same question
of law, which is, that any negligence of the driver of the
school wagon could not be imputed to the deceased child
to prevent a finding by the jury in favor of the plain-
tiff, her father, and that the combined negligence of
such driver and appellant's motorman would not bar a
recovery by the plaintiff.

Appellant grounds its reason for its objection to the
two instructions upon the law of imputed negligence in

cases where the parent has entrusted his child to the care or custody of another. The statement of the law in the instructions concerning the question of imputing to the child the negligence of the driver, was a correct statement, and neither of such instructions is erroneous on account of such statement. The further statement in said instructions that, even though the jury found that the driver of such conveyance was negligent, and that the deceased child did not contribute thereto, the father (plaintiff in this case) should not be denied a recovery on account of the negligence or lack of skill, if any, of the driver, which contributed to her injury and death, is not subject to the criticism made. It does not appear in the briefs that the deceased child was charged with any negligence or lack of care whatever. The only negligence charged or attempted to be proven that contributed to the injury, was laid upon the driver of the conveyance; and, according to what has been hereinbefore said, such negligence, if any there was, cannot be attributed to the father of the deceased child.

The second group consists of one instruction, which the appellant insists misstates the application of what is known as the doctrine of the last clear chance.

5. According to the evidence in this case the motorman saw the team of horses standing a few feet from the track, and also saw the team start and go upon the track, at which time the car which the motorman was driving was some distance away, which distance was testified to by himself. Other evidence was given showing the distance a car would run before it could be stopped by the use of such appliances for stopping a car with which this car was equipped. The question whether or not the car could have been stopped within the distance of the car from the crossing, as testified to, by the use of such appliances, and whether or not the motorman exercised reasonable care in making use

thereof after he had knowledge of the danger, was a question of fact for the jury, which is determined by the general verdict, and which is deemed not the province of this court, under the circumstances, to disturb. The rule of law as stated by this instruction is upheld by former decisions of this court and of the Appellate Court, and is not subject to the criticism made by the appellant, and was not erroneous. *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 79 N. E. 347, 7 L. R. A. (N. S.) 143, 10 Ann. Cas. 942; *Indianapolis Traction, etc., Co.* v. *Croly* (1911), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091; *Pennsylvania Co.* v. *Reesor* (1915), 60 Ind. App. 636, 108 N. E. 983.

The evolution of the doctrine of imputed negligence has in recent years been such as to be almost revolution against the doctrine. The doctrine of imputed negligence as found in the jurisprudence of the states of the United States, as taken from the British courts, is viewed by text-writers as being no more than an application of the old Roman doctrine of "Identification," which was that a passenger in a public vehicle, though having no control over the driver, must be held to be so identified with the vehicle as to be chargeable with any negligence on the part of its managers who in any manner contribute to an injury inflicted upon such passenger by the negligence of a stranger. The doctrine was established in England in 1849 by the case of *Throgood* v. *Bryan* (1849), 8 C. B. 115, which held that the negligence of a driver of a vehicle would be imputed to a passenger even though such passenger had no control. This doctrine was first adopted in the United States in 1878 by the State of Wisconsin, *Prideaux* v. *Mineral Point* (1878), 43 Wis. 513, 28 Am. Rep. 558, and was thereafter adopted by many other states, the most of which have since rejected it; and Wisconsin is one of the latest states to reject the doctrine. *Reiter* v. *Grober*

(1921), 173 Wis. 493, 181 N. W. 739. The doctrine has even been repudiated in England, and the only jurisdiction of the United States that has not repudiated it is the State of Michigan. The Bernina (1887, C. A.) L. R. 12, Prob. Div. 58; *Jewell* v. *Rogers Township* (1919), 208 Mich. 318, 175 N. W. 151. The extension of the doctrine of identification, as it existed in Roman jurisprudence, has been practically unanimously refused and denied in the United States. *Little* v. *Hackett* (1885), 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652.

Under the doctrine as now understood, in the case at bar, the child, had it survived, would have had a good right of action against appellant, notwithstanding the negligence of the driver of the conveyance contributed thereto, the child being without fault. The right of the father to damages for the loss of services of his child is entirely separate and distinct from the right of the child to recover for such injuries. 1 Schouler, Domestic Relations (6th ed.) §757. When, however, a non-negligent parent sues for loss of services on account of the death of his minor child, occasioned by the negligence of a defendant, and the concurrent or contributory negligence of another in no way privy by contract or agency with such father, the courts are called upon to decide which of two parties, one innocent and the other negligent, should be preferred. There seems no logic or justice in invoking the fiction of imputed negligence in such a case, and the plaintiff ought to recover.

It will be noted from the above that the doctrine of imputed negligence is fast losing ground, and that a majority of the appellate courts of the United States have repudiated it. And, in the light of the movement in the United States to bring about uniform laws in all of the states, it is to be hoped that the jurisdictions in the minority which still cling to the main doctrine of imputed negligence will accept the legal position of

the majority, and that imputed negligence will find footing only in cases where an express or unequivocal agency exists.

And, having found that the general verdict should stand, notwithstanding the answers by the jury to the interrogatories, and that the verdict was sustained by sufficient evidence, and that the instructions complained of are not erroneous, the judgment of the trial court must be upheld.

Judgment affirmed.