## Connelly et al. *v.* Kaufmann and Baer Company, Appellant.

Argued September 29, 1943; reargued March 24, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*John H. Sorg,* for appellant.

*George I. Bloom,* of *Bloom & Bloom,* with him *Alexander Cooper,* for appellees.

OPINION BY MR. JUSTICE LINN, April 20, 1944:

Defendant appeals from judgments on verdicts in favor of a parent, suing in his own behalf and on behalf of his minor child, for injuries sustained by the minor on an escalator in defendant's store in Pittsburgh.

The minor, at the time of injury, was three years and two months old and was in the custody of his mother. She had made several purchases and, according to her testimony, was on a descending escalator holding the boy's left hand as he stood beside her. She testified that as she stepped from the escalator, at the first floor, the child's hand "slipped" from hers "and he fell face forward to the floor." She did not know what caused his

hand to slip from hers; she said, "Well, he fell and his hand was caught on the escalator step right at the floor." "He was on the floor on his knee" but "no part of him [was] on the escalator steps." His "finger had been wedged in too, between these prongs" referring to the comb at the floor level where the steps of the escalator move under the floor. She called for help and, while her testimony varies, she states that "approximately five minutes" passed before the escalator was stopped. Her testimony is that the escalator was then reversed, the child was picked up and taken to the hospital in the store where his wound was treated; that from five to seven minutes elapsed between her first call for help and the time the child was picked up.

The statement of claim averred that the boy and his mother descended on the escalator and ". . . when they had reached the bottom of the Escalator where it passes through the first floor, by reason of its reckless, careless, and negligent construction, the minor plaintiff, Donald F. Connelly, was caused to fall and by reason of the recklessness, carelessness and negligence of the defendant in failing to provide or to give notices to the public generally or its servants, agents or employees of a method of shutting off or stopping the movement of the Escalator, the minor plaintiff sustained serious injuries . . ."

The escalator was an elevator. The minor and his mother were passengers on it and were entitled to the measure of care due by a carrier of passengers to persons lawfully riding: compare *Petrie v. Kaufmann & Baer Co.,* 291 Pa. 211, 139 A. 878; *Strobel v. Park,* 292 Pa. 200, 140 A. 877. No breach of that duty appears. There was no attempt to show that the escalator was defectively constructed. The only possible inference from the mother's evidence of the child's fall, as she was alighting, is that it was purely accidental. For the results of the accident, defendant, without negligence, is not liable. Plaintiffs recognized this and tried the case

on the issue formed by the following averment. "(c) They [defendant] failed to bring the Escalator to a stop when through their servants, agents and employees they had notice that an emergency had arisen and that it was necessary to bring the Escalator to a stop immediately."

The effect of plaintiffs' admissions (1) that the escalator was properly constructed and (2) that defendant was not liable for the injury resulting from the accident (i.e., the child's fall at the comb plate) was to impose on plaintiffs the burden of separating the effect of that injury from the effect of the injury alleged to have been sustained after the defendant had failed to stop the escalator in a reasonable time.[1] Defendant relied on the evidence showing that the escalator had been stopped within a reasonable time and contended there was no tort.

The learned trial judge instructed the jury as follows: "In this case the plaintiffs contend that the negligence was a failure of the defendant to take reasonable precaution for the safety of this youngster after his peril had been discovered, and you have to determine whether or not it did. Now let me get this straight with you. The mere fact that an accident happened is not proof of negligence, nor in this case is the fact that the boy had his middle finger in the comb of that escalator proof of negligence. There is no claim here that the boy's finger got into that comb through any fault of the defendant, and that is particularly important that you keep that in mind. The negligence of the defendant as alleged by the plaintiffs in this case is that the boy's finger, having been caught in that comb, and the mother trying to keep the rest of the boy's hand out, giving notice that the accident had happened, the employees of the store failed to use reasonable care in turning that escalator off so that when she grew faint after a time the boy's hand went into the moving part between the tread and the comb, as

---

[1] Compare *McAllister v. Penna. R. R. Co.*, 324 Pa. 65, 70, 187 A. 415; *Frederick v. Phila. R. T. Co.*, 337 Pa. 136, 142, 10 A. 2d 576.

I understand the plaintiffs' theory, and so you must start with the situation that the boy's middle finger is caught in the comb and from that situation, just for our purposes, the fault of nobody, determine whether or not from that point on the defendant was negligent in failing to exercise reasonable care in preventing further accident and further harm to that boy."

The rule of law is clear. The mother and child were business visitors to whom the defendant owed the duty of keeping its premises reasonably safe or giving warning of any failure so to maintain them: *Kulka v. Nemirovsky,* 314 Pa. 134, 170 A. 261, and cases referred to on page 139; *Burckhalter v. F. W. Woolworth Co.,* 340 Pa. 300, 304, 16 A.2d 716; *Mills v. Lit Brothers,* 347 Pa. 174, 32 A.2d 10. That duty was performed as appears by plaintiffs' abandonment of any claim for liability for the injury resulting from what we have referred to as the accident. The performance of defendant's duty required something more than merely furnishing a proper escalator; it was also necessary to see that it was operated with due regard for the reasonable safety of such persons as should be expected to be brought in contact with it. The proper management of such operation necessarily involved stopping the machine if emergency required. The minor's accidental predicament created the emergency. The first notice of it was the mother's warning. It then became the defendant's duty to do what was reasonably necessary in the operation of the machine to save the minor from additional injury, and if necessary, to stop the escalator. It could be stopped by pressing a button on the end of it at the floor where the mother stepped from the escalator or at the floor from which she descended. Defendant's duty to the minor as a business visitor [2] required defendant to release him from the con-

---

[2] The record does not require discussion of the cases from other jurisdictions asserting or denying a legal duty based on so-called moral considerations: cf. *Ayres & Co. v. Hicks* (Ind.), 40 N. E. (2d)

tinuing effect of the moving machine, after having a reasonable time in which to stop it: compare *Frederick v. Phila. R. T. Co.*, 337 Pa. 136 10 A.2d 576. Was it stopped in a reasonable time? If it was, plaintiffs have no case because the injury was purely accidental. If it was not stopped in a reasonable time, what injury, not sustained in the accident, was sustained after a reasonable time elapsed? Those questions, on the evidence produced, were for the jury, and while the great weight of evidence on this point was with the defendant, the jury found for the plaintiffs.

Defendant now complains that its motions for judgment n.o.v. and for a new trial were refused and that the instruction on the subject of the mother's contributory negligence was erroneous. Escalators are in common use in large cities. Photographs of the one in question were put in evidence. Considering the manner in which it was constructed and operated, it is, to say the least, highly improbable that a small child's finger could have been lodged against the comb at the floor (under which the steps of the escalator disappear) for a period of from five to seven minutes, especially in view of the evidence that the escalator moved at the rate of 90 feet a minute; it is more likely that the finger would be torn off and his hand released long before such a period could elapse. Seven witnesses, called on behalf of defendant, testified with respect to the time that elapsed between the mother's warning and the stopping of the escalator. They describe this period in various forms, such as, "less then a minute"; "about a minute"; "about a minute or so"; "almost immediately"; "a matter of a few seconds"; "a second"; "a few seconds, probably maybe fifteen seconds." Some evidence, called by defendant, would indicate that at the time of the child's injury the mother was not on the escalator with him;

334; *Griswold v. Boston & Maine R. R. Co.*, 183 Mass. 434; *Union Pac. Ry. Co. v. Cappier*, 66 Kan. 649.

that she was standing nearby. A witness testified that he stopped [3] the escalator and "I realized that his finger was caught between the comb of the escalator and the tread on the steps and I called for someone to get a key to reverse the escalator." The escalator was reversed and he took the child to the hospital in the store.

As the plaintiffs concede that defendant is not liable for the injury to the child's finger prior to the expiration of a reasonable time after the mother's warning to stop the escalator, and as defendant's evidence, if believed, would require a finding that the escalator was stopped in a reasonable time, the controlling question of fact is whether, as defendant contends, the injury resulted from pure accident or whether, as plaintiffs contend, there were two transactions, (1) the accidental injury to the first joint of the second finger for which plaintiffs made no claim, and, (2) the injury requiring the amputation of the third finger and laceration of the little finger occurring after the escalator should have been but was not stopped.

The conflict in the evidence requires that we overrule the assignment of error complaining of the refusal of defendant's motion for judgment n. o. v.

We all agree that on the evidence produced it was for the jury to say whether the mother exercised the required measure of care for the child during the time while it was on the escalator, especially in view of the evidence indicating that at the time of the injury she was not on the escalator with the child. Her contributory negligence would bar recovery by the parent: Restatement, Torts, section 496, and Penna. Annotations

---

[3] "Q. Did you bring the escalator to a stop? A. I thought I did, and later I heard that one of the fellows at the top of the escalator had pressed the button also. So I don't know which one of us stopped the escalator. Q. At least, you pressed the button? A. Yes. Q. Will you state whether or not the escalator came to a stop? A. Yes, the escalator came to a stop."

to that section. The charge limited the jury's inquiry to her conduct after the child fell.[4] The assignment of error complaining of the charge in this respect must therefore be sustained.

While we all agree that there was error in the charge on the mother's contributory negligence, a majority agree that as the father's case must, for that reason be retried, a proper exercise of discretion requires that, in view of the weight of the evidence supporting defendant's contention, we also sustain the assignment of error complaining of the refusal of a new trial of the minor's case.

Judgments reversed and new trials awarded.

DISSENTING OPINION BY MR. CHIEF JUSTICE MAXEY:

I agree with the majority opinion that it was for the jury to say whether the mother exercised the required measure of care and that her contributory negligence if found by the jury would bar recovery by the parent.

But I would not sustain the assignment of error complaining of the refusal of a new trial of the minor's case. That case was submitted to the jury under proper instructions and while the jury could under the evidence have found for the defendant, the verdict is not, in my judgment, so decisively against the weight of the evidence as to require the granting of a new trial. The fact that a judge or judges of a court would decide an issue of fact differently than the jury decided it, does not justify the granting of a new trial. Nor can the weight

---

[4] The portion of the charge complained of reads: "That question, of course, of contributory negligence also must take place between the time the middle finger was caught, because that is what we are arguing about here, and if you find that after the middle finger was caught, Mrs. Connelly by some negligence on her own part, if you find the defendant was negligent, that Mrs. Connelly, by some negligence on her own part contributed to the happening of the accident, then that negligence on her part would be attributed to the plaintiff husband here and there could be no recovery insofar as the husband is concerned."

of testimony on one side or the other of any case be determined by counting the number of witnesses who respectively support or deny a certain vital averment. The rule is settled that "if there is any credible evidence from which a reasonable inference can be drawn in support of the claim of either party the question must be left to the jury . . . If there is conflicting evidence, or a dispute as to what actually occurred, and any view that the jury might lawfully take of it will sustain their findings for either party, the facts should not be withdrawn from them": 20 R. C. L., sec. 75, p. 1067 (cases cited).

If the escalator was not stopped until it had an opportunity for six or seven minutes to lacerate the hand of this child, there was negligence on the part of the defendant and its employees. The mother testified that "it was at least six or seven minutes before it [the escalator] was stopped". Her testimony if believed, warranted the verdict as to the minor child. The only tribunal which had legal authority to refuse to believe her testimony was the jury.

I do not agree that "it is highly improbable that a small child's finger could have been lodged against the comb at the floor . . . for a period of from five to seven minutes". The mother declared that the second finger of the child's right hand was caught in the "comb of the floor plate" of the escalator. A visual inspection of an escalator "comb" shows that it is perfectly adapted to catching and holding a child's finger. The mother in the excitement caused by the situation she faced was probably unable to use that cool judgment which might have suggested a way to release the finger even before the escalator was stopped. The mother grabbed the hand so that it would not be drawn further into the moving part of the escalator and then relaxed her hold. Meantime this escalator was apparently "chewing" off the end of the second finger of the child's right hand.

A substantially similar injury was inflicted on a child whose finger was similarly caught in an escalator

in an Indiana department store, for the case of *Ayres & Co. v. Hicks* (Ind.), 40 N. E. (2d) 334, arose out of an accident to a six-year-old boy who was in a department store accompanied by his mother, and who was injured by having the fingers of both of his hands caught in the moving parts of an escalator at the place where it disappears into the floor. It was testified to that the escalator though equipped with "emergency stop buttons ran 70 steps" or about 88 feet, before it was stopped. (It was travelling at the speed of 90 feet a minute) and that three to five minutes elapsed between the time the fingers were caught and the time they were released. While the case was reversed because of error in the instructions as to damages, the Supreme Court of Indiana said: ". . . there could have been no incidental duty on the appellant to anticipate the accident, to instruct its employees, or to keep someone in attendance when the machine was in operation . . [but] it may be deduced that there may be a legal obligation to take positive or affirmative steps to effect the rescue of a person who is helpless and in a situation of peril, when the one proceeded against is a master or an invitor or when the injury resulted from use of an instrumentality under the control of the defendant. . . In the case at bar the appellee was an invitee and he received his initial injury in using an instrumentality provided by the appellant and under its control. Under the rule stated above and on the authority of the cases cited this was a sufficient relationship to impose a duty upon the appellant. Since the duty with which we are presently concerned arose after the appellee's initial injury occurred, the appellant cannot be charged with its anticipation or prevention but only with failure to exercise reasonable care to avoid aggravation."

In footnote 2 of the majority opinion reference is made to the case just cited and other cases as "asserting or denying a legal duty based on so-called moral considerations". The history of the development of the law

reveals that practically all our law of torts (as well as of crimes) is based on moral considerations.* Rights and obligations are constantly emerging from principles of social conduct which have obtained governmental recognition and what was at one time only an "injury without wrong" may later be recognized in law as a wrongful injury. "Legal rights are relative, and arise out of those complex relations of human society which create correlative rights and duties, whose performance is so necessary to the good order and well-being of society that the state makes their observance obligatory. . . A principle of social conduct may be recognized so universally as to demand that it be observed as a legal duty." 38 Am. Jur., p. 658.

The pleadings presented an issue of fact for the jury's determination; the evidence was conflicting and the credibility of all the witnesses was for the jury. I would not disturb the jury's verdict and the judgment entered upon it, in favor of the minor plaintiff.

Mr. Justice HORACE STERN and Mr. Justice HUGHES concur in this dissent.

---

* "The law has grown by development through the influence of the opinion of society guided by its skilled advisers. . . . Law, properly so-called, whether civil or criminal, means essentially those rules of conduct which are expressly and publicly laid down by the sovereign will of the state and are enforced by the sanction of compulsion. . . . If its [the law's] full significance is to be appreciated, larger conceptions than those of the mere lawyer are essential; conceptions which come to use from the moralist and the sociologist, and without which we cannot see fully how the genesis of law has come about." Excerpt from address of Rt. Hon. Richard Burdon Haldane, Lord High Chancellor of Great Britain, before the American Bar Association 1913, Vol. 38 Reports of the American Bar Association, p. 402. "It is true, I think today, in every department of the law that the social value of a rule has become a test of growing power and importance:" CARDOZO: "The Nature of 'The Judicial Process'", p. 33. "Jurisprudence has its basis in ethics, and must develop with the unfolding of the common consciousness of right and wrong". John W. Burgess: "The Civil War and the Constitution", Vol. 1, p. 16.