341 F.2d 457
 Jerry D. GILLAM, by his father and next friend, Lester D. Gillam, Plaintiff-Appellee,
v.
J. C. PENNEY COMPANY, Defendant, Westinghouse Electric Corporation, Defendant-Appellant.
Lester GILLAM, Plaintiff-Appellee,
v.
J. C. PENNEY COMPANY, Defendant, Westinghouse Electric Corporation, Defendant-Appellant.
 No. 14483.
 No. 14484.
 United States Court of Appeals Seventh Circuit.
 February 5, 1965.
 
 R. Stanley Lawton, F. Boyd Hovde, Indianapolis, Ind., for Westinghouse Electric Corp., Ice, Miller, Donadio & Ryan, Indianapolis, Ind., of counsel.
 Howard S. Young, Jr., Arthur L. Payne, Indianapolis, Ind., for plaintiff-appellee, Lewis, Weiland, Payne & Carvey, Young & Young, Indianapolis, Ind., of counsel.
 Emerson Boyd, Indianapolis, Ind., for appellee, J. C. Penney Co., Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., of counsel.
 Before DUFFY, CASTLE and KILEY, Circuit Judges.
 DUFFY, Circuit Judge.
 
 
 1
 These appeals are from judgments in two negligence actions wherein J. C. Penney Company (Penney) and Westinghouse Electric Corporation (Westinghouse) were the defendants. The jury rendered verdicts against both defendants in the personal injury action in the amount of $35,000, and in the amount of $13,900 in the action by the father of the injured boy for loss of services. The two suits were tried together.
 
 
 2
 Penney cross-claimed against Westinghouse for indemnity. Penney filed a motion for judgment n. o. v. or for a new trial. The trial court awarded indemnity to Penney. Judgment was entered for Penney on the cross-claims. After Westinghouse appealed, Penney filed a protective appeal. The questions involved in the cross-actions between the defendants are not issues on the instant appeals.
 
 
 3
 On August 25, 1959, Jerry Gillam, aged three years, in the company of his mother, was in a Penney store in Indianapolis, Indiana. They got on an escalator to travel from the second floor to the first floor of the store. Mrs. Gillam was holding her son's right hand when he sat down on a step of the moving escalator. The flesh of the boy's left arm became caught between the riser of the step and the upright metal side-wall called a skirt. Another passenger stopped the escalator shortly after the boy's arm was caught. By this time the boy's hand and arm had been drawn below the level of the step tread. The arm was injured to a point below the elbow although no bones were broken.
 
 
 4
 The manner in which the injury occurred is described by appellee substantially as follows: The skin of the boy's forearm just above the left wrist touched the aluminum skirt or side at the junction of the nose or edge of the step and the upright side of the skirt. This pushed the skin into a narrow space, forcing the skin against the skirt which caused greater friction and held the arm. The space opened up and the step rolled over the arm until the arm was down in the space between the end of the step and the skirt up to approximately the boy's elbow.
 
 
 5
 The escalator in question was one of six manufactured and installed by Westinghouse for the defendant Penney. In the store in question, they were all installed at the same time and were alike in their parts, construction and working principles. Westinghouse had serviced, maintained and inspected these escalators from the time of their installation until the time of the trial. Westinghouse's service man, Resener, was in the Penney store three or four times a week performing his regular chores in servicing the escalators. He had, in fact, made a service inspection the day before the boy was injured. He testified he found the escalator in good operating condition with no spacing between the step and the skirt in excess of 3/16 inch on one side and ¼ inch over all.
 
 
 6
 All escalators in the Penney store had been approved by the Elevator Safety Subdivision of the State of Indiana when installed. Thereafter, these escalators were inspected by "special inspectors" of the Elevator Subdivision. These inspectors were, for the most part, employees of insurance companies, and they inspected escalators and elevators in buildings which their respective companies had insured. Both before and after the date of the accident, on occasions of the six-month inspections by the State Elevator Inspector, excessive clearances were found in one or more of the Penney escalators.
 
 
 7
 Witnesses Hesselberg and Miller testified that the escalator unit in question was as good as any at the time of installation; that there is no custom or practice in the industry relating to maintaining any certain spacing between steps and skirts. They acknowledged the movement of steps past the skirt was a dangerous feature, but each stated this was true of any piece of machinery with moving parts, and that there was no way of changing the escalator in question, or any other escalator, so as to prevent this type of accident.
 
 
 8
 Plaintiffs claim that Westinghouse a) failed to maintain the escalators in safe condition; b) failed to make reasonable inspections of the escalators; and c) maintained the escalator with an unreasonably large space between the skirt and the step.
 
 
 9
 On this appeal, Westinghouse puts in issue the sufficiency of the evidence to support the judgments. We, therefore, consider only the evidence most favorable to the plaintiffs and the inferences reasonably and fairly to be drawn therefrom.
 
 
 10
 Evidence was received, which the jury was entitled to believe, that Westinghouse gave instructions to its service and maintenance personnel in charge of its escalators in Penney's and elsewhere, that the correct clearance between the end of the step and the skirt was a maximum of 3/16" on one side and not more than ¼" total for both sides. There was also evidence that if Westinghouse's inspector Resener found the clearances to be excessive, he would correct them.
 
 
 11
 In the contract between Westinghouse and Penney, the former agreed to keep the escalator equipment "properly adjusted" and to "use all reasonable care to maintain the electric stairways in proper and safe operating condition."
 
 
 12
 Westinghouse strongly insists that prejudicial error was committed by the court in receiving evidence of two other accidents on Penney escalators in Indianapolis. One took place on the escalator where Jerry Gillam was injured and about forty months thereafter; the other accident was on a different Penney escalator and occurred about ten months prior to the accident in question. Westinghouse points out that both of the incidents involved rubber overshoes or boots which were caught between the escalator step and the skirt. However, the jury was entitled to consider that all of Penney's escalators were identical in size, shape, construction and design, and had been installed at the same time, and that they all had been inspected and maintained by Westinghouse continuously from the date of the installation to the date of the trial.
 
 
 13
 It is the law of Indiana that evidence of other accidents is admissible where such accidents were of a similar character and occurred under similar conditions. Baber v. Rickart et al., 52 Ind. 594, 597; Indiana, etc. Gas Co. v. Anthony, 26 Ind.App. 307, 319, 58 N.E. 868, 872. In any event, the evidence was harmless, for Westinghouse, as a part of its defense, admitted that many shoe accidents had occurred on escalators and were continuing to occur, and claimed that nothing could be done to prevent such accidents. We hold there was no error in receiving evidence of the two other escalator accidents.
 
 
 14
 Westinghouse asserts error because the court received in evidence a photograph showing a man's foot pushing at a skirt panel joint. The plaintiffs' expert witness took the picture to demonstrate an experiment. Where an experiment is fairly made under the same or similar conditions which existed when the accident occurred, the court may receive such evidence. Clevenger v. Kern, 100 Ind.App. 581, 197 N.E. 731. We find no error in this respect.
 
 
 15
 Westinghouse requested the court to submit certain interrogatories to the jury which the court refused to do. The submission of interrogatories to a jury is within the discretion of the trial court. Rule 49(b), Federal Rules of Civil Procedure. We hold there was no abuse of discretion.
 
 
 16
 It is the position of Westinghouse that it was entitled to an instruction based upon its theory of the case. The fact is, Westinghouse had three principal theories of defense: 1) If Mrs. Gillam's conduct was the sole proximate cause of the accident, there could be no recovery; 2) Even if Westinghouse were negligent, Mrs. Gillam's conduct constituted an independent intervening cause, barring recovery; and 3) Jerry Gillam was injured due to a "mere accident." The court did not give the instructions as tendered.
 
 
 17
 Westinghouse's fundamental defense was that it was guilty of no negligence which was a proximate cause of Jerry Gillam's injuries. The trial court fully instructed the jury on this point. Phrasing this defense in three different ways does not change the situation. The only time it is error to refuse such an instruction is on a theory of a defense which was not covered in the instructions which the trial court gave. We think, considering the charge to the jury in its entirety, there was no prejudicial error in refusing Westinghouse's request to instruct as hereinbefore indicated.
 
 
 18
 We think the trial court's instructions defined proximate cause and that "intervening cause" was also covered in the definitions given. We find no error in the refusal of the trial court to give the instructions in the form proposed by Westinghouse.
 
 
 19
 Westinghouse complains that it was error for the court to instruct the jury that negligence of Mrs. Gillam could not be considered in determining liability. That instruction was correct insofar as the suit brought in behalf of Jerry Gillam is concerned, for under Indiana law, such negligence, if any, could not be imputed to Jerry, an infant three years of age, who could not himself be guilty of contributory negligence. City of Evansville v. Senhenn, 151 Ind. 42, 47 N.E. 634, 51 N.E. 88, 41 L.R.A. 728; City of Jeffersonville v. McHenry, 22 Ind.App. 10, 15, 53 N.E. 183. However, the situation with reference to the suit brought by Lester Gillam, the father of Jerry, presents an entirely different question.
 
 
 20
 In his suit, Lester Gillam asked damages of $4,000 to reimburse him for medical expenses incurred, and alleged that he has been and will be deprived of his son's services to his damage in the sum of $6,000. He then alleged that his entire damage was $25,000. The jury awarded damages of $13,900.
 
 
 21
 Plaintiffs say that no question has been raised on these appeals as to the amount of damages awarded by the jury. This seems somewhat surprising as the evidence showed that there would be no loss of function in the boy's injured arm. However, the question was raised in the trial court. In Penney's motion for a new trial, the last allegation of error was "The damages to each of the plaintiffs are excessive."
 
 
 22
 However, the critical question on the second appeal before us is whether, under Indiana law, any negligence on the part of the mother could be a bar to the father seeking recovery for loss of services of his son in an action brought pursuant to Burns Indiana Stat. § 2-217.
 
 
 23
 Defendant-appellant relies on three early Indiana cases. In Pittsburgh, Fort Wayne and Chicago Railway Company v. Vining's Administrator (1867), 27 Ind. 513, one of the questions before the court was whether plaintiff's complaint sufficiently alleged that the child was not guilty of negligence. The complaint alleged that the child was on the railroad track without the fault or negligence of his parents. The court held that the complaint was sufficient and that where an infant of tender years is exposed to danger, the averment of no negligence should be made as to the custodians of the child rather than as to the infant itself. However, as pointed out by plaintiff-appellee, in the year 1867, when the Vining's opinion was written, the negligence of parents in Indiana was imputed to the child to bar the child's right of recovery.
 
 
 24
 The second early case relied on by appellants is Citizens' Street Railroad Company of Indianapolis v. Stoddard (1894), 10 Ind.App. 278, 37 N.E. 723. The plaintiff-father brought an action to recover for the death of his minor child who was run over by one of the defendant's street cars. The principal question raised on appeal was whether the boy's mother, in sending him across the street, was contributorily negligent as a matter of law so as to bar recovery. The court held that under the facts and circumstances disclosed in the complaint, the court could not declare, as a matter of law, that the mother was contributorily negligent. This decision was also written at a time when the law of Indiana imputed the negligence of a parent to a child who was non sui juris. However, it may be significant to note the remark of the court at page 728 of 37 N.E.: "In this connection, it is proper to observe, the general rule, as we understand it, is that when a parent sues for his own benefit to recover damages for the technical loss of service caused to him by injury to the child, the contributory negligence on the part of either the parent or child, unless the child is exceedingly young, will preclude a recovery by the parent."
 
 
 25
 The third early case relied on by appellant is Lake Erie & W. R. Co. v. Fleming (1915), 183 Ind. 511, 109 N.E. 753. There, the question before the court was whether, as a matter of law, the parents, grandfather, and a youth who was caring for the deceased minor, were guilty of contributory negligence. The court held that it could not say that either of the parents, the grandfather, or the youth were negligent so as to bar the father's recovery.
 
 
 26
 In 1898, the Indiana Supreme Court changed the rule that a parent's negligence could be imputed to a non sui juris child, and held that negligence on the part of a parent is not a defense to the child's actions for injuries. City of Evansville v. Senhenn, supra. Of course, that decision does not solve the problem which we are immediately considering.
 
 
 27
 In Citizens Street Railroad Company of Indianapolis v. Stoddard, supra, the principal issue on appeal was whether the child's mother was contributorily negligent as a matter of law so as to bar recovery. If the mother's negligence was not a bar at all, it would seem the court would have said so, and it would then not have been necessary to consider whether the evidence required a finding of negligence as a matter of law.
 
 
 28
 A similar situation existed in Lake Erie & W. R. Co. v. Fleming, supra. If the negligence of the grandfather or the youth in custody of the child, or the mother, would not bar the father's action, it would have been a simple matter for the court to have said so without further discussion.
 
 
 29
 It might be argued that in the instant case, the cause of action is given by statute to the father, but that any contributory negligence was by the mother. However, it seems likely from the language used by the court in the Stoddard case, supra, had the mother been found guilty of contributory negligence, the father would have been denied recovery. Also, in the Fleming case, supra, we may infer from the court's language that contributory negligence on the part of either parent, the grandfather or the youth in custody, would have been sufficient to bar the father's right of recovery.
 
 
 30
 We refer to an additional Indiana case which was not cited by the parties to this suit. In Indianapolis Street Railway Co. v. Antrobus (1904), 33 Ind.App. 663, 71 N.E. 971, the father of a 6-year old boy who had been killed by one of defendant's street cars, brought a suit for damages. The court said at page 972 of 71 N.E.: "If the child was the plaintiff, the negligence of the parent would not be imputed to it; but the father is the plaintiff, and seeks to recover because of the negligence of the defendant. In such case the negligence of the parents is a proper question for the consideration of the jury."
 
 
 31
 While the cases just cited imply that negligence will be imputed from spouse to spouse to bar the parent's recovery in actions involving injury to a minor child, we are well aware, through our own efforts, that the case of Union Traction Company v. Gaunt (1922), 193 Ind. 109, 135 N.E. 486, 489, 23 A.L.R. 649, casts considerable doubt on the question of imputed negligence in the absence of agency or joint enterprise. However, the Gaunt case did not consider the interspousal relationship but rather held that the negligence of a school bus driver would not be imputed to the father to bar his recovery for loss of services in the absence of a showing of agency or joint enterprise.
 
 
 32
 As there are no recent court decisions in Indiana which have considered the question here at issue in the second appeal, and in order for us to determine as best we can how the Indiana Supreme Court or the Indiana Appellate Court would decide the question, we look to various legal treatises and decisions of courts in other states.
 
 
 33
 The editors of the Indiana Law Encyclopedia, in the chapter entitled "Parent and Child", Section 11, state that the parent's right of recovery may be barred by the contributory negligence of a child capable of such negligence or by the contributory negligence of the parent, citing Pittsburgh, etc. v. Vining's Administrator, supra.
 
 
 34
 In Restatement of Torts appears the following statement: "§ 496. Parent Seeking Recovery for Loss of Child's Services. A parent is barred from recovery for harm to his legally protected interest in the services of his child, if a) the child is so young as to be incapable of effectively exercising self-protective care and b) the child's incapacity is a contributory factor in bringing about the harm or death and c) the parent has failed to exercise reasonable care to prevent the child from placing itself in a situation in which its lack of self-protective capacity may reasonably be expected to result in harm to it."
 
 
 35
 In 67 C.J.S. Parent and Child § 46, at page 749 appears: "Contributory negligence on the part of the parent ordinarily will preclude a recovery by him for an injury to the child. Similarly, contributory negligence on the part of the custodian of the child, where imputed to the parent in accordance with the rules discussed in Negligence § 163, will bar recovery by the parent."
 
 
 36
 In Beasley v. United States, 81 F.Supp. 518, which, however, did not involve Indiana law, the court said at page 532: "The relationship of husband and wife and of parents and child are so closely and intimately connected that I think it fair to impute to the mother the knowledge and contributory negligence of the father."
 
 
 37
 Generally speaking, in community property states such as California and Texas, the courts hold that because a recovery is for the benefit of the community, such recovery is barred where the negligence of the other parent was, together with the act of the defendant, the cause of the child's harm. See 66 A.L.R. 2d 1325.
 
 
 38
 A case from Pennsylvania is also of interest. In Connelly v. Kaufmann & Baer Co., 349 Pa. 261, 37 A.2d 125, 152 A.L.R. 555, a 3-year-old boy caught his finger in an escalator at a point where the comb met the step. The court said, page 128 of 37 A.2d: "We all agree that on the evidence produced it was for the jury to say whether the mother exercised the required measure of care for the child during the time while it was on the escalator * * *. Her contributory negligence would bar recovery by the parent. Restatement of Torts, section 496. * * *." It should be noted that in the Connelly case, it was the father who brought the suit for damages.
 
 
 39
 Plaintiff argues that in any event, as a matter of law, there was no negligence on the part of Mrs. Gillam, and that there is no duty of parents to guard their children against unknown dangers. We think this was a jury question, assuming that under Indiana law, contributory negligence by Mrs. Gillam would bar the recovery in the suit brought by her husband for loss of services and medical expenses.
 
 
 40
 Both parties in the second appeal agree that the Court made an error in instructing on the question of damages. In the event this suit goes to a second trial, undoubtedly this error will be corrected.
 
 
 41
 In Appeal No. 14483, wherein Jerry D. Gillam is the plaintiff, the appellant has noted additional claims of error. We have considered each question raised, and consider such claims to be without merit. It would unduly extend this lengthy opinion to discuss individually these various claims.
 
 
 42
 In Appeal No. 14483, wherein Jerry D. Gillam is the plaintiff, the judgment of the District Court will be and is affirmed.
 
 
 43
 In Appeal No. 14484, wherein the father, Lester Gillam, is the plaintiff, the case will be reversed and remanded because the District Judge took away from the jury the question of any contributory negligence on the part of Mrs. Gillam.
 
 
 44
 Judgment in No. 14484 is reversed and remanded.